DECISION
This matter was brought before this Court by Kathleen Hemingway ("Plaintiff") for an order compelling Edward Hemingway ("Defendant"), her ex-husband, to fulfill the terms of the parties' February 18, 1983 Property Settlement Agreement (the "Agreement") and for a judgment in the amount of $53,755.80. At the close of Plaintiff's case, this Court granted Defendant's motion for a directed verdict as to Count II only.
Facts/Travel
The parties were married on October 2, 1965. Three children were born during the marriage: Kerry Hemingway on 1/21/67 and Sean and Kara Hemingway on 7/20/70. On February 28, 1983, the Defendant obtained an uncontested Haitian divorce.
Pursuant to the Agreement, the Plaintiff was awarded custody of the three minor children, along with child support, alimony, title to the family home and savings and the division of various credit card debts. In return, the Defendant received $5,000 and his requested quick and uncontested divorce.
Because the divorce decree as well as the Agreement specifically stated that the Agreement was to be incorporated into the divorce decree but not merged with the decree, the Agreement survived as an independent contract between the parties. Consequently, it is enforceable as such. Riffenburg v.Riffenburg, 585 A.2d 627, 630 (R.I. 1991).
The plaintiff alleges in Count I of her complaint that she is owed upwards of $150,000 by the Defendant as reimbursement for the educational expenses incurred by her on behalf of the parties' three children. Plaintiff relies on paragraph SEVENTH
of the Agreement to substantiate her claim. Paragraph SEVENTH
states in its entirety: "The parties agree to divide equally any secondary school or college bills that the children incur."
The Defendant refutes the plaintiffs' allegations. He argues that he does not owe the Plaintiff any money and makes various arguments on his behalf. The Defendant first argues that the Agreement is not a valid enforceable contract due to duress, fraud and/or lack of consideration. If this argument fails, and the Court finds the Agreement binding, the Defendant states that the Court must recognize, and find binding, the parties' oral modification thereto, in which the Plaintiff released the Defendant of his duty to financially support the children's education. In the alternative, the Defendant argues that if the Agreement is found to be enforceable by its own terms, then this Court must also find that he has satisfied all the terms of the Agreement and consequently owes no money to the Plaintiff. Defendant's alternate arguments will be addressed in turn.
The Defendant first argues that the Agreement is unenforceable. In support of this contention, Defendant states that the Agreement was drafted by the Defendant and her attorney without Defendant's input, that he signed it under duress, and he did not have the advice of counsel prior to signing the Agreement.
These arguments are without merit. Although it is undisputed that Plaintiff and her then attorney, Stephen Fortunato, put the Agreement on paper, the evidence overwhelmingly indicates that the terms of the Agreement were negotiated between the parties prior to the Plaintiff's retaining Attorney Fortunato. Attorney Fortunato was simply the conduit to establishing and perfecting the Agreement already agreed to by the parties. He also advised and retained Haitian counsel for Plaintiff. Based on the trial testimony and evidence before this Court, this Court finds that the Defendant was well aware of, understood and had previously agreed to the terms of the Agreement prior to signing the Agreement.
Furthermore, Defendant's argument clearly contradicts the express terms of the Agreement. The Agreement states plainly that "the parties freely and voluntarily enter into the Agreement." Not only does the Agreement contain this language, but an affidavit, described by Attorney Fortunato to the Defendant, and consequently signed by the Defendant on the same day as the Agreement, states that the Defendant "freely and voluntarily" signed and understood the Agreement.[1]
Duress does not render a contract void, merely voidable.McGee v. Stone, 522 A.2d 211, 214 (R.I. 1987). A party asserting duress must "act promptly or be deemed to have affirmed the conduct in question." Id. Defendant had ample opportunity to contest the Agreement, yet he failed to do so for over ten years. Defendant cannot now contest the Agreement when Plaintiff seeks to enforce it.
Nor can Defendant claim the Agreement is unenforceable due to his lack of understanding of the terms of the Agreement. The general rule is that ignorance of the contents of a writing is not a defense to an action thereon: "The usual rule is that if there is no fraud, duress or mutual mistake, one who has the capacity to understand a written document who reads and signs it, or, without reading it or having it read to him, signs it, is bound by his signature as to all of its terms." WesterlyHospital v. Higgins, 106 R.I. 155, 160, 256 A.2d 506 (R.I. 1969). Consequently, the Defendant is bound by the terms of the Agreement.
Although contracts are generally construed against the drafting party if an ambiguity is found therein, A.C. BealsCompany v. Rhode Island Hospital, 292 A.2d 865, 872 (R.I. 1972), this Court finds no ambiguity which could have led the Defendant to believe he was signing something other than the obligations he voluntarily undertook with the Plaintiff. Because the evidence indicates that the terms were negotiated and agreed to prior to the Plaintiff's retention of Attorney Fortunato, the above doctrine of contract interpretation is not an issue.
In the alternative, the Defendant argues that if this Court finds the Agreement to be valid, it must also find that the Agreement was subsequently orally modified. A written contract may be orally modified. Royer v. Royer, 501 A.2d 739, 741 (R.I. 1985). The Defendant states that the Plaintiff released him from his obligation for payment of the children's tuition. No credible evidence was presented that such a modification was in fact entered into by the parties. Therefore, the Court finds the Agreement is enforceable as written.
Defendant's final claim is that the Agreement, on its face, states that Defendant's obligations terminate as to each child when that child attains the age of 21. In making this argument, the Defendant relies on paragraph FIFTH and SIXTH of the Agreement, which state:
 FIFTH: The Husband shall pay to the Wife the sum of $25.00 per week per child for the support of each child, or an aggregate of $75.00 per week, until each child has attained the age of 21, and upon a child reaching the age of 21, the Husband's obligation regarding child support respecting that particular child shall terminate.
 SIXTH: Plaintiff, Edward F. Hemingway, shall pay to the Defendant, Kathleen V. Hemingway, in addition to child support, the sum of $25.00 per week as alimony for herself, and the Plaintiff shall pay to the Defendant an additional $25.00 per week as alimony out of any monies he makes in overtime in any given week if said overtime payments total $25.00 or more, provided, however, the Plaintiff shall not be obliged to pay the Defendant any alimony after the youngest children attain the age of 21;
Because of the age limitation set out in the above paragraphs, the Defendant claims his obligations pursuant to paragraphSEVENTH also terminate when the particular child reaches 21.
"When the terms are found to be clear and unambiguous, the task of judicial construction is at an end. The contract terms must be applied as written and the parties are bound by them. In determining whether the [contract] is clear and unambiguous we begin by giving the words their `plain, ordinary and usual meaning.'" Aetna Casualty Surety Co. v. Graziano,587 A.2d 916, 917 (R.I. 1991) (internal citations omitted). After reviewing the Agreement in its entirety, this Court finds no ambiguities. It is evident that the age limitations set forth in paragraphs FIFTH and SIXTH are particular only to the obligations set forth therein. They are the only two paragraphs with age set as the condition for the termination of the obligation. There are no indications, whatsoever, which would indicate that the age limitations contained in paragraph FIFTH
and SIXTH are meant to be interpreted into the remaining paragraphs contained in the Agreement.
This Court is satisfied that the Defendant entered into the Agreement voluntarily, with more than adequate knowledge and an understanding of the obligations contained therein. No fraud or duress has been demonstrated. The interaction between the parties over the years, pursuant to this Agreement, lends further support to the finding that the Agreement is complete and no subsequent modifications have been made thereto.
For the foregoing reasons, this Court finds the Defendant owes the Plaintiff one-half of all costs incurred by her on behalf of the education of the children. Consequently, the counter-claims brought by the Defendant are dismissed. Judgment will enter in favor of the Plaintiff for $53.755.80.
[1] Paragraph 3 of the affidavit states:
I was presented with a Property Settlement Agreement, the terms of which I had agreed to earlier with my wife, and the Agreement accurately reflects what my wife and I had agreed on, and I freely and voluntarily signed it. Mr. Fortunato explained that when a property settlement agreement is not merged into the divorce judgment but survives it, the property settlement agreement is treated like an independent contract between the husband and wife and can be enforced by either party in a court just as any other contract could be. In other words, because the agreement survives the divorce judgment and is independent from it, the party who seeks to enforce the agreement does not have to go into a family or domestic court, but can go into any court that handles contract cases;